O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARD SAFARYAN,<br><br>        Petitioner,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>        Respondents. | Case No. 5:26-cv-03845-KES<br><br>ORDER DENYING THE PETITION |

## I.    INTRODUCTION

Eduard Safaryan ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  Respondents answered the Petition ("Answer" at Dkt. 12), and Petitioner replied ("Reply" at Dkt. 14).  The parties have consented to the jurisdiction of the Magistrate Judge.  (Dkt. 11.)

For the reasons discussed below, the Petition is **denied**.

1

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Entry into the U.S. and Removal Order (1999-2026).

Petitioner is a citizen of Armenia who arrived in the U.S. on a tourist visa in 1999.  (Pet. at 2 ¶ 2.)  In 2000, he was charged with removability for overstaying that visa.  (Pet. at 2 ¶ 2.)  In 2006, while his removal proceedings were pending before an Immigration Judge ("IJ") , Petitioner pled no contest to assault with a deadly weapon under California Penal Code § 245(a)(1), arising out of a road rage incident.  See Safaryan v. Barr, 975 F.3d 976, 980 (9th Cir. 2020).  The IJ ultimately ordered him removed based on this conviction in September 2015.  Id.; see also Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 075-726-744, Armenia, last accessed July 7, 2026).

Petitioner appealed to the BIA, which dismissed the appeal on December 5, 2016.  See EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 075-726-744, Armenia, last accessed July 7, 2026); see also Safaryan, 975 F.3d at 980-81.  On December 30, 2016, Petitioner filed a petition for review in the Ninth Circuit.  Safaryan v. Barr, No. 16-74039 (9th Cir.), Dkt. 1.  His removal was stayed while the case was pending.  Id., Dkt. 9.  On September 17, 2020, the Ninth Circuit denied his petition for review.  Safaryan, 975 F.3d at 979.  On November 9, 2020, the Ninth Circuit issued its mandate, dissolving the stay of removal. Safaryan, No. 16-74039, Dkt. 40.

There is no evidence that ICE detained Petitioner or took any action to remove Petitioner to Armenia for the next five years.  Petitioner is married to a U.S. citizen and is the father of three U.S. citizen children; his elderly parents and his sister are also U.S. citizens.  (Pet. at 2 ¶ 3.)

On June 9, 2026, nearly six years after his removal order became final, ICE detained Petitioner outside his home.  (Pet. at 3 ¶ 6.)

**B.   Prior Habeas Petition.**

On June 23, 2026, Petitioner filed a habeas petition in this Court challenging his detention by ICE.  Safaryan v. Blanche, No. 5:26-cv-03445-KES (C.D. Cal.) ("Safaryan I").  That petition argued that Petitioner was detained "without a statutory basis" because he had been ordered removed more than five years ago and he "was never detained during the 90-day removal period.  Id., Dkt. 1 at 7 ¶¶ 21-22.  On June 30, 2026, Respondents answered the petition, arguing that Petitioner's detention was statutorily authorized and "presumptively reasonable" because it had lasted less than six months.  Id., Dkt. 9 at 3-4.  They also argued:

> Petitioner has failed to establish that removal to Armenia is not reasonably foreseeable.  Dkt. 1.  Petitioner has not provided evidence that Armenia has denied acceptance of Petitioner, or that United States immigration laws or procedures preclude his removal there.  Id.  Zadvydas does not require Respondents to pre-arrange a noncitizen's travel documents before arresting them, which would often be extremely difficult if not impossible.

Safaryan I, Dkt. 9 at 4.

On July 8, 2026, the Court granted the petition and ordered Petitioner's release, largely because Respondents failed to present any analysis of the district court cases cited in the petition, see, e.g., Diallo v. Joyce, 817 F. Supp. 3d 202 (S.D.N.Y. 2025), which hold that post-removal detention is not statutorily authorized where a noncitizen was not detained during the removal period.  Safaryan I, Dkt. 14.  However, this Court noted:

> This Order does not address a situation in which DHS diligently obtains travel documents and arrests a noncitizen in order to swiftly effectuate their removal based on those travel documents.  In the present case, although Petitioner has been detained for about a month, Respondents have not provided a description or evidence of any such

efforts or any estimate of when his removal might occur.  They also have not provided any explanation of what prompted Petitioner's arrest, simply stating that he is detained "for purposes of enforcing his Final Removal Order."

Id. at 13 n.7.[1]

### C.  Release and Re-Detention.

In response to the Court's order, Petitioner was released on an order of supervision ("OSUP") on July 8, 2026.  (Pet. at 3 ¶ 8.)  The OSUP required Petitioner to report to ICE on the morning of Friday, July 10, 2026, approximately 36 hours after being released.  (Pet. at 3-4 ¶ 8.)  Petitioner appeared for this check-in and was re-detained.  (Pet. at 4 ¶ 10.)

He was served with a written notice of revocation indicating that his OSUP was being revoked due to changed circumstances, i.e., the issuance of a travel document.  (Pet. at 4 ¶ 10; Pet. Ex. G / Dkt. 1-1 at 66-68 (the notice).)  The notice stated Petitioner's removal would take place no later than July 26, 2026.  (Id.)

Respondents later provided Petitioner's counsel with a copy of the travel document.  (Pet. at 4 ¶ 12 ; Pet. Ex. H / Dkt. 69-71.)  The travel document, entitled "Certificate of Return to the Republic of Armenia," indicates that it was issued on June 30, 2026 and that it is valid until October 28, 2026.  (Pet. Ex. H / Dkt. 69-71.)  According to Respondents, "[N]o further documentation is required to effectuate Petitioner's return to Armenia."  (McKenna Decl. ¶ 18 / Dkt. 12-1 at 2.)

On July 7, 2026—one day before the Court issued its order in Safaryan I— ICE "manifested the Petitioner for removal on a Special High Risk Charter Flight to Armenia set to depart the United States at the end of July 2026."  (McKenna

---

[1] Petitioner also argued that Respondents were violating his constitutional rights by providing him with inadequate medical care while in custody.  The Court declined to reach this issue, noting it was unclear whether habeas jurisdiction exists over such a claim.  Safaryan I, Dkt. 14 at 13-14.

Decl. ¶ 19 / Dkt. 12-1 at 2.)  ICE "does not wish to provide the exact date for operational security," but states that it will occur "no later than July 26, 2026." (McKenna Decl. ¶¶ 19, 30 / Dkt. 12-1 at 2, 4.)

**D.    Current Petition.**

Petitioner filed the present Petition on July 10, 2026, the same day he was re-detained.  The Petition raises the following claims:

Ground 1: "Unlawful Revocation of Release": Respondents have failed to show "changed circumstances" justifying the revocation of his OSUP, because when he was released on the OSUP, the travel document for Armenia had already been issued.  (Pet. at 12 ¶ 30.)  He argues this renders Respondents' actions "arbitrary, capricious, an abuse of discretion, and contrary to law" under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(a)(2)(A).  (Pet. at 12 ¶ 31.)

Ground 2: "Violation of Procedures for Revocation of Release": The OSUP revocation was procedurally improper because the individual who signed the revocation notice lacked statutory authority to do so.  (Pet. at 12-13 ¶ 33.)

Ground 3: "Unlawful Detention Without Individualized Determinations of Danger or Flight Risk Prior to Detention": "Petitioner received no process prior to his re-detention to determine if detaining him was warranted.  Further, given Petitioner's medical condition and ICE's inability to properly manage it, his health is at jeopardy in detention."  (Pet. at 13 ¶ 36.)  "Petitioner is entitled to an individualized determination by impartial adjudicators as to whether detention is justified based on danger or flight risk."  (Pet. at 13 ¶ 37.)

The Petition seeks immediate release from custody, the return of any confiscated property, and an injunction preventing future detention without a pre-arrest hearing before an impartial adjudicator.  (Pet. at 14-15 ¶¶ 1-9.)

When Petitioner filed the Petition, he also applied for a temporary restraining order ("TRO").  (Dkt. 2.)  On July 13, 2026, the Court denied the TRO

application, finding:

> Petitioner has not shown that he is likely to succeed on the merits of Ground 1.  He does not dispute that ICE had authority to revoke his OSUP and re-detain him based on a change in circumstances, such as Armenia's issuance of travel documents.  Instead, he disputes that this is a true change because the travel documents were issued in June 2026 while Safaryan I was still pending.  This, however, appears to be exactly the kind of changed circumstance that the Court contemplated in Footnote Seven of its order in Safaryan I.  No one previously told the Court that Armenia had issued travel documents and that ICE had scheduled a date for Petitioner's removal in July 2026[.]

> As for Ground 2, Petitioner has not shown that this alleged violation would likely merit an order of release since, even if true, could be corrected after-the-fact and does not implicate ICE's authority to remove Petitioner.

> As for Ground 3, Petitioner again has not shown that he is likely to succeed on the merits.  Petitioner does not cite law that if ICE has already obtained travel documents and seeks to detain a noncitizen to effectuate a prompt removal within a few weeks, ICE cannot do so unless they first determine that the noncitizen is a danger or a flight risk.

(Dkt. 10 at 2-3.)

## III.   DISCUSSION

To the extent Petitioner argues he was entitled to a pre-detention hearing to determine whether he is a flight risk or danger to the community, his current detention is not based on either finding.  Rather, it is based on a finding that he is likely to be removed in the reasonably foreseeable future.  See generally 8 C.F.R.

§ 241.4(*l*)(2) (providing release may be revoked if "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien").

On the current record, Petitioner's other arguments would, at most, entitle him to receive a new OSUP revocation notice, not release from custody. As discussed above, the current record now reveals that, when the Court ordered Respondents to release Petitioner in Safaryan I, Armenia had already issued a travel document for Petitioner.[2] Petitioner argues, "The truth is that Respondents simply failed to update this Court of these developments during the pendency of the first habeas petition, and now, they are trying to fit a round peg into a square hole by arguing that these events that pre-date Petitioner's release somehow constitute changed circumstances since his release." (Reply at 4.) If anything, this argument undermines the correctness of the Court's order in Safaryan I directing Petitioner's release, rather than undermining Respondents' authority to detain Petitioner to effectuate his removal.

Given the evidence that this removal will be prompt—including a copy of the Armenian travel document and a sworn declaration from Officer McKenna describing concrete plans for removal—the Court finds that Petitioner is not entitled to release from custody for the same reasons discussed in the TRO order.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that the Petition (Dkt. 1) is **denied**.

DATED: July 21, 2026

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[2] It is unclear whether ICE received the travel document on June 30, 2026 or sometime later.

7